COURT OF APPEALS
DECISION
DATED AND FILED

February 10, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1850**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022GN174

**IN COURT OF APPEALS
DISTRICT I**

IN THE MATTER OF THE GUARDIANSHIP AND PROTECTIVE PLACEMENT OF J.J.:

DEPARTMENT ON AGING,

      PETITIONER-RESPONDENT,

  V.

J.J.,

      RESPONDENT-APPELLANT.

      APPEAL from an order of the circuit court for Milwaukee County: CYNTHIA M. DAVIS, Judge. *Affirmed*.

      Before Colón, P.J., Donald, and Geenen, JJ.

¶1 GEENEN, J.[1] Josie[2] appeals from an order continuing her protective placement pursuant to WIS. STAT. § 55.18. Josie asserts that the circuit court lacked the competency to order the continuation of her protective placement because the Milwaukee County Department on Aging (the "County") failed to timely file its annual petition and report necessary to commence the annual review of her protective placement as required by § 55.18(1)(a). Although the County contends that Josie failed to timely preserve her competency challenge, and we agree, we nevertheless consider the merits of Josie's competency challenge in light of the civil rights issues and liberty interests at stake and, in particular, the County's admission in its briefing that "it is not an anomaly for the County department to file its report on a minimally delayed basis."

¶2 We conclude that the language requiring the County to file the petition and report by a certain date is directory, not mandatory, and therefore despite the late filing, the circuit court did not lose the competency to proceed with the annual review of Josie's protective placement.

## BACKGROUND

¶3 Josie was adjudicated incompetent, and on May 26, 2022, the circuit court entered the original guardianship and protective placement orders after concluding that the evidence showed that Josie had a need and met the standards for a protective placement pursuant to WIS. STAT. ch. 55.

---

[1] On this court's own motion this appeal was converted from a one-judge appeal to a three-judge appeal under WIS. STAT. RULE 809.41(3) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

[2] We refer to the appellant in this confidential matter using a pseudonym. *See* WIS. STAT. RULE 809.19(1)(g).

¶4      On April 5, 2023, the County filed a petition and report for annual review of Josie's protective placement. Josie contested the continuation of the protective order, so the circuit court scheduled a full due process hearing on the annual review.

¶5      The circuit court held the annual review hearing on November 16, 2023. At the conclusion of the hearing, the court ruled that the County had established that Josie continued to have a need and meet the standards for the protective placement. The court subsequently ordered the continuation of her protective placement.

¶6      Josie appeals.

## DISCUSSION

¶7      The dispute on appeal is whether the circuit court had competency over Josie's case and could therefore enter an order continuing her protective placement. Competency refers to a circuit court's ability to exercise its authority to decide the specific case before it. *See Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶¶2, 9, 273 Wis. 2d 76, 681 N.W.2d 190. When a court does not have competency over a case, the decisions it makes are erroneous or invalid. *Id.*, ¶¶2, 14.

¶8      Josie argues that the circuit court lost the competency to conduct an annual review when the County filed its petition and report to review the protective placement four days after the deadline specified in Wis. Stat. § 55.18(1)(a). Thus, Josie contends, the court erred as a matter of law when it proceeded with the annual review process and ultimately determined that Josie's protective placement should be continued. The County disagrees, and also argues

that, because Josie did not raise an objection at any point during the annual review process, she forfeited her right to challenge the circuit court's competency on appeal. Although we agree that Josie failed to preserve the competency issue, we decline to find that the argument was forfeited and conclude that the County's noncompliance with the time period under § 55.18(1)(a) did not result in a loss of competency.

¶9    "'[F]orfeiture is the failure to make the timely assertion of a right[.]'" *State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (citation omitted). Generally, in order to raise an issue on appeal, a party must first timely preserve that issue by raising it before the circuit court; otherwise, the issue is forfeited. *State v. Huebner*, 2000 WI 59, ¶¶10, 11 & n.2, 235 Wis. 2d 486, 611 N.W.2d 727. Nevertheless, the forfeiture rule is not absolute, but is "a rule of judicial administration, and thus a reviewing court may disregard a forfeiture and address the merits of an unpreserved issue in an appropriate case." *State v. Counihan*, 2020 WI 12, ¶27, 390 Wis. 2d 172, 938 N.W.2d 530.

¶10    We decline to apply the forfeiture rule here and we address the merits of Josie's claim. The County admits in its briefing that "it is not an anomaly for the County department to file its report on a minimally delayed basis." Therefore, it appears possible or even likely that—in light of the County's lackadaisical attitude toward the statutory deadline—challenges to competency in this context are likely to arise again. Additionally, whether the circuit court had the competency to proceed with Josie's annual review is a question of law that involves no disputed factual issues and is fully briefed by the parties. *See State v. Bodoh*, 226 Wis. 2d 718, 737, 595 N.W.2d 330 (1999) (noting that we may consider an argument raised for the first time on appeal when it presents only a question of law and is thoroughly briefed by the parties). In light of such

4

circumstances, we conclude that, despite Josie's forfeiture of the issue,[3] our consideration of the merits of Josie's argument is necessary to the development of the law.

¶11 Thus, we turn to the merits of Josie's argument that the circuit court did not have the competency to proceed with the annual review because the County failed to comply with the statutory time period under WIS. STAT. § 55.18(1)(a). Josie argues that the statute's use of the word "shall" is mandatory and, therefore, the County's failure to comply with the mandatory statutory time limit caused the circuit court to lose competency to conduct the annual review. In response, the County contends that "shall" as used in § 55.18(1)(a) is directory, not mandatory, and therefore the County's untimeliness did not result in a loss of competency. We agree with the County and conclude that the statute's use of "shall" in defining the precise timing of the annual review is directory.

¶12 "A party's failure to comply with a statutory time limit deprives a court of competency to proceed only when the time limit is mandatory." *State v. Olson*, 2019 WI App 61, ¶11, 389 Wis. 2d 257, 936 N.W.2d 178. "Whether a statutory time limit is mandatory or directory is a question of law that we review

---

[3] Josie concedes that she did not challenge the circuit court's competency before the circuit court, and instead argues that her challenge was not forfeited because challenges based on noncompliance with *mandatory* statutory time limits cannot be forfeited. Because we conclude below that the time period under WIS. STAT. § 55.18 is directory, there is no dispute that Josie forfeited her competency challenge, and we do not address whether Josie's challenge would have been forfeitable if the time period was mandatory. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]"). We similarly decline to address the County's alternative argument that even if the time period is mandatory, noncompliance would still not result in the circuit court's loss of competency because the specific deadline is not central to the statutory scheme and the County's noncompliance did not prejudice Josie. *See id.*

independently." ***Koenig v. Pierce Cnty. DHS***, 2016 WI App 23, ¶39, 367 Wis. 2d 633, 877 N.W.2d 632.

¶13 We begin by considering the plain language of the statute. ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. WISCONSIN STAT. § 55.18(1)(a) provides that "[n]ot later than the first day of the 11th month after the initial order is made for protective placement for an individual and … annually thereafter, … the county department *shall* … [f]ile a report … [and] petition for annual review[.]" (Emphasis added.) "Generally, the word 'shall' is presumed mandatory when it appears in a statute"; "[h]owever, when used in a statute imposing a time limit, the word 'shall' can nevertheless be construed as directory if necessary to carry out the legislature's clear intent." ***Koenig***, 367 Wis. 2d 633, ¶¶40-41.

¶14 To determine whether a statutory time limit is mandatory or directory we consider the statute's history and purpose, whether the statute imposes a penalty or prohibition for noncompliance with the time limit, and the consequences of interpreting the time limit as mandatory or directory. ***Olson***, 389 Wis. 2d 257, ¶13.

¶15 Chapter 55 "provides for long-term care for individuals with disabilities that are permanent or likely to be permanent" through protective services and protective placements. ***Fond du Lac Cnty. v. Helen E.F.***, 2012 WI 50, ¶21, 340 Wis. 2d 500, 814 N.W.2d 179. The purpose of ch. 55 is "to establish those protective services and protective placements, to assure their availability to all individuals when in need of them, and to place the least possible restriction on personal liberty and exercise of constitutional rights consistent with due process

and protection from abuse, financial exploitation, neglect, and self-neglect." WIS. STAT. § 55.001.

¶16     Protective placement orders are, effectively, permanent; they remain in effect until a circuit court determines that the individual subject to the order no longer satisfies the specific statutory standards for such an order. *See* WIS. STAT. §§ 55.17, 55.18(3)(e); *see also* WIS. STAT. § 55.175; ***State ex rel. Watts v. Combined Cmty. Servs. Bd. of Milwaukee Cnty.***, 122 Wis. 2d 65, 76-77, 362 N.W.2d 104 (1985) ("Protective placements under [WIS. STAT. §] 55.06 are the only involuntary commitments under Wisconsin law that are indefinite in duration[.]").

¶17     The annual review requirement at WIS. STAT. § 55.18 is a result of our supreme court's holding in *Watts* that "protectively placed individuals are entitled to the right of periodic, automatic judicial review that all other civilly committed persons in Wisconsin have." *Watts*, 122 Wis. 2d at 77, 83. The *Watts* court, considering a prior version of ch. 55 that did not require an annual review, concluded that annual reviews of protective placements were required to ensure that a protectively placed individual still had a need and continued to meet the standards for protective placement, in part, because protective placement orders infringe on a person's liberties and do not expire by their own terms. *Watts*, 122 Wis. 2d at 80-84. The legislature codified the annual review process at § 55.18 in response to the *Watts* decision. *See* 2005 Wis. Act 264, Joint Legislative Counsel Prefatory Note (stating that "[t]his bill establishes the requirements and procedures for annual reviews of protective placements as required by [*Watts*.]").

¶18     The language of WIS. STAT. § 55.18(1)(a) is specific about the timing and requires the annual review to be filed by the "first day of the 11th

month after the initial order is made for protective placement" and "annually thereafter[.]" Thus the statutory language makes clear that the legislature intended to ensure that an annual review of protective orders occur as close to every twelve months as practically possible. Sec. 55.18(1)(a).

¶19    However, in implementing the annual review process, the legislature did not impose any penalties on a county department that untimely files the annual petition and report, which supports that the time period is directory. *See **Koenig***, 367 Wis. 2d 633, ¶48. Additionally, the statute addresses untimely petitions and reports at WIS. STAT. § 55.18(3)(b)1. and § 55.18(5). Section 55.18(3)(b)1. requires the court to order an evaluation of the individual subject to a protective order if "[t]he report required under sub. (1)(a)1. is not timely filed[.]" And, § 55.18(5) directs the register in probate of each county to "file with the chief judge of the judicial administrative district a statement indicating whether each report and petition required to be filed by the county department … has been filed" and to explain the reasons why when "a required report or petition has not been filed[.]" That both sections contemplate a failure to file or a delayed filing and neither imposes a penalty supports the conclusion that the time period is directory.

¶20    Furthermore, absurd consequences would result from depriving the circuit court of competency when the county department untimely files the annual petition. Under Josie's interpretation, the circuit court lost competency over her case the moment the County failed to file a petition prior to the first day of the 11th month after the prior protective placement order. If the time limits are so strictly construed that the circuit court loses competency when a single petition is late, even by four days, it creates problems. First, it prevents any annual review from still occurring during the year in which the late petition is filed, which thwarts the purpose of regularly reviewing protective placement orders. Second,

there would be no way for a circuit court to regain competency and conduct an annual review on the still-active protective placement order in the future.[4]

¶21 Josie suggests the consequences of a mandatory interpretation are less severe than they appear because county departments could commence new protective placement actions to safeguard the affected individuals. However, requiring the county department and the protectively placed individual to go through the full procedure for initial petitions for protective placement again due to a minor delay in filing an annual review petition would be needlessly burdensome on the parties and the courts while providing no material benefit to the protectively placed individuals. *See* *Watts*, 122 Wis. 2d at 83 ("[I]t is not necessary for equal protection purposes to annually commence the procedure as if it were the initial petition for placement."). Restarting the process rather than continuing with a late review would further delay the review required to safeguard a protectively placed individual's rights.

¶22 Josie also argues that the statutory time period is mandatory because it triggers the initiation of proceedings, much like the time period this court found mandatory in *Olson*. However, the time period at issue in *Olson* is distinguishable. In *Olson*, this court considered whether Department of Health Services' ("DHS") failure to timely file a statement of probable cause and petition

---

[4] Although Josie states that protective placement orders "effectively expire[]" despite being indefinite due to the annual review requirement, Josie fails to discuss the ramifications of the annual review court's loss of competency on the underlying protective placement order. We note that WIS. STAT. ch. 55 only allows for the termination of a protective placement order if the circuit court determines that the individual subject to the order no longer satisfies the specific statutory standards for such an order. *See* WIS. STAT. §§ 55.17, 55.18(3)(e); *see also* WIS. STAT. § 55.175. Josie provides no support or argument to suggest that a failure to hold a timely annual review would automatically void the underlying order without any further proceedings.

to revoke an order for conditional release within 72 hours of detaining Olson pursuant to WIS. STAT. § 971.17(3)(e) was mandatory. *Olson*, 389 Wis. 2d 257, ¶1.

¶23　*Olson* involved criminal proceedings following Olson's conditional release; he was detained in jail, without access to counsel, for eight days. *Id.*, ¶¶5-6, 31-32. Thus, DHS's delay in submitting a statement of probable cause and petition under the statute implicated Olson's due process rights by affecting the timely initiation of judicial proceedings to address Olson's recent detainment. *Id.*, ¶21. Here, annual review under ch. 55 does not address a change in liberty but instead concerns whether an ongoing protective placement order still appropriately addresses a protectively placed individual's needs. *See* WIS. STAT. § 55.18(3)(e).

¶24　Finally, Josie states that if the time period is directory, then it would "flout equal protection." Specifically, Josie reasons that because some WIS. STAT. ch. 51 time periods are mandatory, construing the time period in WIS. STAT. § 55.18 as directory would create unconstitutionally disparate protections between the two statutory schemes. We disagree.

¶25　Chapter 51 provides procedures for *short-term* involuntary civil commitments and "has the principal purpose of 'assuring the provision of a full range of treatment and rehabilitation services for all mental disorders and developmental disabilities and for mental illness, alcoholism and other drug abuse.'" *Helen E.F.*, 340 Wis. 2d 500, ¶¶20, 29 (citation modified) (quoting WIS. STAT. § 51.001(1)). Importantly, as the *Watts* court noted when it declined to adopt the ch. 51 review procedure into ch. 55, they are distinct enough that "the same procedures in one may not be required nor appropriate in the other for equal protection to be satisfied. When considering equal protection, rights need not

necessarily be the same and in some situations sameness may be impossible or unnecessary." *Watts*, 122 Wis. 2d at 84.

¶26 For support, Josie only cites to case law involving time periods during the initial civil commitment proceedings in ch. 51 cases. *See Dodge Cnty. v. Ryan E.M.*, 2002 WI App 71, ¶¶5, 12, 252 Wis. 2d 490, 642 N.W.2d 592 (holding that the circuit court lost competency when a probable cause hearing did not occur within 72 hours after the individual was taken into custody pursuant to WIS. STAT. § 51.20(7)(a)); *State ex rel. Lockman v. Gerhardstein*, 107 Wis. 2d 325, 329-30, 320 N.W.2d 27 (Ct. App. 1982) (holding that the 14-day deadline for the circuit court to hold a hearing after a probable cause determination under § 51.20(7)(c) is mandatory). In doing so, Josie impermissibly conflates the rights involved during initial commitment proceedings with the rights involved during the annual review of the protective placement order at issue here.

¶27 Our supreme court in *Watts* recognized the distinction between the initial commitment proceeding and the annual review proceeding. It specifically held that "it is not necessary for equal protection purposes to annually commence the procedure as if it were the initial petition for placement." *Id.*, 122 Wis. 2d at 83. The initial protective placement procedures under ch. 55 are not at issue here, and Josie does not develop an argument for why the annual review time period should nonetheless be treated the same as the initial commitment time periods. Therefore, we reject Josie's contention that a directory interpretation of the annual review time period in WIS. STAT. § 55.18 would violate equal protection simply because some statutory time periods involving initial proceedings in ch. 51 are mandatory.

¶28 We emphasize that our conclusion should not be interpreted to provide support for county departments to shirk their responsibilities under WIS. STAT. § 55.18 by regularly filing untimely annual petitions and reports. Although we conclude that the time limit in § 55.18(1)(a) is directory, "directory should not be read to imply that the provision is merely discretionary or permissive" because "[t]he legislature intended that the time limit be strictly followed," even though it did not intend for the annual review court to be deprived of competency when a violation of the time limit occurs. *State v. R.R.E.*, 162 Wis. 2d 698, 715, 470 N.W.2d 283 (1991). Timely annual review of protective placement orders remains—statutorily and constitutionally—required. *Watts*, 122 Wis. 2d at 83-85; § 55.18.

## CONCLUSION

¶29 For the foregoing reasons, we conclude that the time period to file the annual petition and report under WIS. STAT. § 55.18(1)(a) is directory, and therefore, the circuit court did not lose its competency to proceed with the annual review when the County filed the petition and report four days late. Accordingly, we affirm.

*By the Court.*—Order affirmed.

Recommended for publication in the official reports.